**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 26, 2005**

MILISSA MCCLEMENTS,

    Plaintiff-Appellee/Cross-Appellant,

v                                   No. 126276

FORD MOTOR COMPANY,

    Defendant-Appellant/Cross-Appellee.

_____

**BEFORE THE ENTIRE BENCH**

**MARKMAN, J.**

We granted leave to appeal in this case to resolve two questions: (1) whether a common-law claim of negligent retention can be premised on sexual harassment in light of the remedies provided by the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; and (2) whether an employer can be held liable under the CRA for sexual harassment against a non-employee. The trial court granted summary disposition to defendant on both issues, ruling that there was insufficient notice to Ford to support the negligent retention theory, and that plaintiff could not pursue a claim under the CRA without demonstrating at least a

"quasi-employment" relationship. The Court of Appeals affirmed with respect to the CRA claim, but reversed with respect to plaintiff's negligent retention claim. We hold that: (1) a common-law claim for negligent retention cannot be premised upon workplace sexual harassment; and (2) because plaintiff has failed to establish a genuine issue of material fact that defendant affected or controlled the terms, conditions, or privileges of her employment, she cannot bring a claim against defendant under the CRA. Accordingly, we affirm in part and reverse in part the judgment of the Court of Appeals, and reinstate the trial court's order of summary disposition in favor of defendant.

I. FACTS AND PROCEDURAL HISTORY

Defendant Ford Motor Company hired AVI Food Systems to operate three cafeterias at its Wixom assembly plant. Plaintiff Milissa McClements was hired by AVI as a cashier at the Wixom plant in March 1998.[1] Plaintiff testified that Daniel Bennett, then a superintendent in the predelivery department of the plant, had in November 1998[2] invited her

---

[1] Within a month, plaintiff filed a complaint with AVI alleging that she was sexually harassed by a non-AVI contractor. After an investigation, AVI had the offending nonemployee removed from its premises.

[2] The record is replete with confusion over when the alleged incidents took place. In her complaint, plaintiff alleged that the incidents with Bennett occurred in

(continued…)

2

on "three or four" occasions to meet him at a local fast food restaurant. On each occasion, plaintiff rebuffed his invitation. According to plaintiff, Bennett "seemed very persistent, like he didn't understand that I wasn't interested." Plaintiff acknowledged that, at this point, Bennett was polite, and there was no testimony that he used sexual or foul language. Bennett denies making any such invitations.

Plaintiff described two additional encounters with Bennett that occurred during this same time period. During the first of these encounters, Bennett allegedly entered the cafeteria while it was closed, and approached plaintiff from behind. Plaintiff testified that "I was facing the opposite way. He came up and just grabbed me and turned me around and stuck his tongue in my mouth." After "a few days," plaintiff allegedly had a second encounter with Bennett in the closed cafeteria. According to plaintiff, Bennett again grabbed her from behind, attempted to stick his tongue in her mouth, and stated, "Come on, I know you want it. Isn't there somewhere we can go and have sex?" Plaintiff refused this advance, and Bennett left the

(…continued)
September 1998. However, in her deposition, plaintiff testified that the incident could have taken place in late November, early December 1998, because she "seem[ed] to remember it being Thanksgiving . . . ."

3

cafeteria. Plaintiff allegedly reported the incidents to her union steward, but claims that she was advised that if she reported the incident to defendant, it would "turn around and stab you in the back and you [would] end up losing your job." Plaintiff did not report the incident to either defendant or AVI until the instant lawsuit was filed.

In 2000, plaintiff was approached by another Ford employee, Justine Maldonado,[3] who claimed that she had also been sexually harassed by Bennett. Specifically, Maldonado claimed that in January or February 1998, Bennett exposed himself to her and demanded oral sex in the parking lot of the Wixom plant. Bennett also allegedly followed Maldonado in his car, got out after she had stopped at a floral shop, and reached into her car and tugged on her blouse. In late-October 1998, Maldonado told Joe Howard, her uncle and a production manager at Wixom, about the incidents.[4] During "the last couple days" in October, Maldonado told David Ferris, a former Ford superintendent who was on temporary

---

[3] In a separate action by Maldonado, we directed oral argument on whether to grant Maldonado's application for leave to appeal or take other peremptory action permitted by MCR 7.302(G)(1). *Maldonado v Ford Motor Co*, 471 Mich 940 (2004).

[4] Howard testified that his conversation with Maldonado about the alleged harassment did not take place until October 1999.

assignment to her union, about the incidents. Maldonado testified that she spoke with Ferris just before undergoing knee surgery on November 2, 1998. Ferris testified that "two or three days" later, he confronted Bennett about Maldonado's accusations. The next day, Ferris informed Jerome Rush, Wixom's director of labor relations, about the alleged incidents of sexual harassment. Ferris testified that the conversation lasted a minute "at the most." Rush allegedly told Ferris that he "need not be involved in these types of issues" and took no further action.

Even after learning of the Maldonado incidents, plaintiff did not come forward with her allegations. However, plaintiff's attitude changed after Maldonado informed her in August 2001 that Bennett had exposed himself to three teenage girls. In 1995, Bennett was convicted of misdemeanor indecent exposure, for exposing himself to three teenage girls on I-275 while he was driving a company car. Defendant was aware of the incident, because the police determined Bennett's identity by tracing the car through Ford.[5]

---

[5] Bennett's conviction was expunged by the district court in November 2001. Before granting summary disposition to defendant, the trial court granted defendant's motion to strike all references to the conviction from the complaint.

5

After learning about the indecent exposure arrest and conviction, plaintiff filed the instant lawsuit in September 2001. Plaintiff claimed that defendant: (1) negligently retained Bennett, whom it knew had a propensity to sexually harass women; and (2) breached its obligation under the CRA to prevent Bennett from sexually harassing her.

The trial court granted defendant's motion for summary disposition. First, the trial court found that there was no evidence that defendant knew of Bennett's propensity to sexually harass women in the workplace. Maldonado's complaints to her uncle and friend were not sufficient to give defendant notice of Bennett's sexually harassing behavior and the 1995 conviction alone is insufficient to establish that propensity. Thus, defendant could not be held liable under the negligent retention theory. Second, the trial court found that plaintiff as a nonemployee could not hold defendant liable under the CRA. However, even if defendant were potentially liable under the CRA, it could not be held liable under these circumstances, because its higher management was never made aware of the allegedly sexually harassing behavior. In an unpublished opinion, the Court of Appeals affirmed in part and reversed in part the judgment of the trial court. Unpublished opinion per

6

curiam of the Court of Appeals, issued April 22, 2004 (Docket No. 243764). The Court of Appeals held that defendant's knowledge of the indecent exposure arrest and Maldonado's allegations created a genuine issue of material fact whether defendant "knew or should have known of Bennett's sexually derogatory behavior toward female employees." However, the Court of Appeals also applied the "economic reality test," *Ashker v Ford Motor Co*, 245 Mich App 9, 14; 627 NW2d 1 (2001), and held that defendant was not plaintiff's employer. As a result, the Court of Appeals concluded that plaintiff could not maintain a CRA complaint against an entity that is not her employer. This Court granted defendant's application for leave to appeal, as well as plaintiff's application for leave to file a cross-appeal. 471 Mich 937 (2004).

## II. STANDARD OF REVIEW

We review de novo the grant or denial of a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition is only permitted if the evidence, while viewed in a light most favorable to the plaintiff, fails to establish a claim as a matter of law. *Wilkinson v*

7

*Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). We review de novo the questions whether the CRA displaces a common-law claim for negligent retention based upon sexual harassment in the workplace and whether an employer can be held liable under the CRA for sexual harassment against a nonemployee because they are questions of law. *Morales v Auto-Owners Ins Co (After Remand)*, 469 Mich 487, 490; 672 NW2d 849 (2003).

### III. ANALYSIS

The issue in this case is not whether Bennett has engaged in reprehensible conduct either inside or outside the workplace. Rather, the issues are: (1) whether defendant negligently retained Bennett as a supervisor as of the time Bennett allegedly sexually harassed plaintiff, despite the fact that it knew or should have known of his propensity to sexually harass women; and (2) whether defendant is responsible under the CRA for failing to prevent sexual harassment of plaintiff even though plaintiff was not a direct employee of defendant.

### A. NEGLIGENT RETENTION CLAIM

Plaintiff's first theory is that defendant negligently retained Bennett as a supervisor after learning of his propensity to sexually harass women. In general, an employer is not responsible for an intentional tort in the

8

workplace committed by its employee acting outside the scope of employment. *Martin v Jones*, 302 Mich 355, 358; 4 NW2d 686 (1942). However, this Court has previously recognized an exception to this general rule of liability when the employer "'knew or should have known of his employee's propensities and criminal record before commission of an intentional tort by [that] employee . . . .'" *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 412; 189 NW2d 286 (1971) (citation omitted). Plaintiff argues that defendant knew of Bennett's "propensity" to engage in sexually harassing behavior because of: (1) Bennett's 1995 indecent exposure conviction; and (2) Maldonado's complaints to defendant's supervisor (Howard) and labor relations representative (Rush) concerning Bennett's harassment. Plaintiff concludes that defendant breached its duty of reasonable care by retaining Bennett despite its knowledge of his previous actions. The Court of Appeals held that whether defendant "knew or should have known" of Bennett's propensities was a question of fact for the jury.[6]

---

[6] Defendant argues that the Court of Appeals improperly allowed the jury to resolve the issue of whether defendant had a duty towards plaintiff. We agree that whether a duty exists to a particular plaintiff is a question for the court. *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500-501; 418 NW2d 381 (1988). An employer's duty is

(continued…)

9

However, in those cases in which we have held that an employer can be held liable on the basis of its knowledge of an employee's propensities, the underlying conduct comprised the common-law tort of assault. See *Hersh, supra* at 412; *Bradley v Stevens*, 329 Mich 556, 563; 46 NW2d 382 (1951). In the instant case, however, the entire premise for plaintiff's negligent retention claim is the *statutorily based* tort of sexual harassment. Before passage of the CRA, Michigan did not provide a common-law remedy for workplace discrimination. *Pompey v Gen Motors Corp*, 385 Mich 537, 552; 189 NW2d 243 (1971). Plaintiff's protections against being sexually harassed in the workplace are wholly creatures of statute. "'Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred

---

(…continued)
to exercise reasonable care in selecting and retaining its employees. However, it is the province of the jury to determine whether an employer has breached that duty by retaining the employee in question. In order for the jury to determine whether an employer has breached this duty, it must first determine whether the employer "knew or should have known" that its employee had a propensity to engage in the conduct that caused the injury to the plaintiff. The propensity at issue in the instant case is an alleged propensity to sexually harass women. Because plaintiff's exclusive remedy for a claim based on sexual harassment is the CRA, there is no question of fact for the jury and, therefore, summary disposition was appropriate.

thereby and to that only.'" *Monroe Beverage Co, Inc v Stroh Brewery Co*, 454 Mich 41, 45; 559 NW2d 297 (1997), quoting *Lafayette Transfer & Storage Co v Pub Utilities Comm*, 287 Mich 488, 491; 283 NW 659 (1939). Here, the CRA provides the right to be free from sexual harassment, MCL 37.2103(i), and accords an aggrieved worker the remedy of "a civil action for appropriate injunctive relief or damages, or both." MCL 37.2801(1). Plaintiff's remedy, then, for any act of sexual harassment is limited to those provided by the CRA. Accordingly, there is no common-law claim for negligent retention in the context of workplace sexual harassment.[7]

Plaintiff invokes MCL 37.2803, which states that the CRA "shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state." However, contrary to the dissent's theory, *post* at 7, this statutory language does not allow a worker to bring a CRA claim under the guise of

---

[7] We note defendant's assertion that the *Hersh* rule is contrary to public policy concerning the rehabilitation of first-time offenders. According to defendant, *Hersh* encourages employers to refuse to hire anyone who was ever convicted of even a misdemeanor, for fear that they might later be held liable for any conduct by the employee that somehow could be linked, after the fact, to the circumstances of that crime. Because we hold that plaintiff's negligent retention claim cannot be maintained, there is no need at this time to reach defendant's public policy argument.

11

a negligent retention claim.  Rather, this provision simply allows a worker to bring suit under any legal theory that existed before the passage of the CRA.  Thus, a worker would not be barred by the CRA from bringing a common-law negligent retention claim, as long as the premise for that claim is a tort that existed before passage of civil rights legislation.[8]

Therefore, because the CRA provides the exclusive remedy for a claim based on sexual harassment, plaintiff has failed to establish a claim of negligent retention,[9] and no inquiry into whether defendant possessed sufficient notice that Bennett was engaged in sexual harassment is necessary.

## B. CIVIL RIGHTS ACT CLAIM

Plaintiff's second theory is that defendant failed to prevent sexual harassment in the workplace.  MCL 37.2202(1) states in pertinent part:

---

[8] For example, if an employee had a history of committing simple assault, and the employer knew or should have known of that history, then a third party who was assaulted by the employee might be able to hold the employer liable under a negligent retention theory premised on simple assault.

[9] Both the dissent and the concurrence/dissent argue that plaintiff's negligent retention claim "implicates other torts such as assault and battery."  *Post* at 3. While that may be, plaintiff premised her claim on sexual harassment, not assault or battery.

An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system.

Discrimination based on sex includes sexual harassment. MCL 37.2103(i). The statute defines sexual harassment as follows:

Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.

(*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.

13

(*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i).]

Plaintiff claims that CRA forbids *any* entity classified as an employer from discriminating against *any* individual, including nonemployees. Therefore, because the actions of defendant's employee allegedly created a sexually hostile work environment, defendant can be held liable under the CRA. Defendant, on the other hand, argues that an employer can only be held liable for discrimination against a nonemployee if some form of employment relationship exists between the parties. Both the trial court and the Court of Appeals held that plaintiff was required to prove at least a "quasi-employment relationship" before a claim under the CRA could be maintained. We conclude that, unless an individual can establish a genuine issue of material fact that an employer affected or controlled the terms, conditions, or privileges of his or her employment, a nonemployee may not bring a claim under the CRA.

Fundamental canons of statutory interpretation require us to discern and give effect to the Legislature's intent as expressed by the language of its statutes. *DiBenedetto*

14

*v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). If the language is unambiguous, as is generally the case, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459; 663 NW2d 447 (2003), "we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *DiBenedetto, supra* at 402.

MCL 37.2201(a) defines an "employer" for purposes of the CRA as "a person who has 1 or more employees, and includes an agent of that person." As recognized by plaintiff, the language of the statute does not otherwise narrow the scope of who may be considered an employer. Thus, MCL 37.2202 forbids *any* employer from engaging in acts of discrimination that are prohibited by the CRA. MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. Indeed, the CRA appears to clearly envision claims by nonemployees for the failure or refusal to hire or recruit, MCL 37.2202(1)(a); the improper classification of applicants by a status prohibited under the CRA, MCL 37.2202(1)(b); and the discrimination against former employees by operation of a benefit plan or system, MCL 37.2202(1)(c). Accordingly, to limit the availability of relief under the CRA to those suits brought by an employee

15

against his or her employer is not consistent with the statute.

However, the language of the statute is also clear in requiring some form of nexus or connection between the employer and the status of the nonemployee. MCL 37.2202 forbids an employer from using a classification protected by the CRA: to "discriminate against an individual with respect to . . . a term, condition, or privilege of employment," MCL 37.2202(1)(a); to "deprive the . . . applicant of an employment opportunity," MCL 37.2202(1)(b); or to "discriminate against a person . . . with respect to a term, condition, or privilege of employment," MCL 37.2202(1)(c). In other words, an employer is liable under the CRA when it utilizes a prohibited characteristic in order to adversely affect or control an individual's employment or potential employment. Thus, the key to liability under the CRA is not simply the status of an individual as an "employee"; rather, liability is contingent upon the employer's affecting or controlling that individual's work status. Accordingly, an employer can be held liable under the CRA for discriminatory acts against a nonemployee if the nonemployee can demonstrate

that the employer affected or controlled the terms, conditions, or privileges of the nonemployee's employment.[10]

In *Chiles v Machine Shop, Inc*, 238 Mich App 462; 606 NW2d 398 (1999), the Court of Appeals came to the same conclusion while interpreting similar language in the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1202.[11] In *Chiles*, an employee injured his back on the

_____

[10] For example, a secretary who works for a temporary employment agency might not be an "employee" at the office where she is sent to fill in. However, there is little question that the employer at that office would dictate the terms, conditions, or privileges of her employment with the temporary employment agency, at least during the pendency of her temporary employment.

[11] This provision of the PWDCRA is identical in all relevant respects to the CRA. MCL 37.1202(1) states in relevant part:

Except as otherwise required by federal law, an employer shall not:

(a) Fail or refuse to hire, recruit, or promote an individual because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

(c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual

(continued…)

17

job and filed for worker's compensation benefits.  After he was laid off, the employee brought suit under the PWDCRA. The "employer," who laid off the plaintiff, argued that it was not liable under the PWDCRA because the employee was technically employed by a separate, though affiliated, company.  The Court in *Chiles* noted that the PWDCRA

> addresses the conduct of an "employer" who *takes adverse employment action against* an "individual" because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job.  MCL 37.1202(1)(a);  MSA 3.550(202)(1)(a).  The act does not limit the definition of "employer" to the plaintiff's employer but, instead, simply defines it as a "person who has 1 or more employees."  MCL 37.1201(b); MSA 3.550(201)(b).  [*Chiles, supra* at 468 (emphasis supplied).][12]

Thus, liability under the PWDCRA "does not require that an employment relationship exist," but it does require that the employer defendant "have the authority to affect a plaintiff's employment or potential employment."  *Id.* at 468-469.  However, the authority to affect a worker's employment *alone* is not sufficient to impose liability upon

---

(…continued)

> of employment opportunities or otherwise adversely affects the status of an employee because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

[12] The definition of an employer is essentially the same under the CRA.  MCL 37.2201(1)(a).

18

an employer defendant.[13]   Rather, in order to be liable under the PWDCRA, the employer defendant must also "take[] adverse employment action" against the worker plaintiff. Accordingly, under *Chiles*, the employer defendant must (1) have "the ability to affect adversely the terms and conditions of an individual's employment or potential employment," *id.* at 468; and (2) "take[] adverse employment action against an 'individual' because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job . . ., e.g., discriminatorily refusing to hire an applicant on account of a disability," *id.* at 468, quoting MCL 37.1202(1)(a).  In other words, the more precise articulation of the *Chiles* rule is that the employer defendant must, in fact, *use* such authority by "tak[ing] adverse employment action against an individual" in violation of the PWDCRA.   Thus, to be liable under the PWDCRA, the employer defendant must actually affect or control the terms, conditions, or privileges of an individual's employment.   The Court of Appeals in *Chiles* determined that the employer defendant directly supervised

---

[13]  Thus, contrary to the concurrence\dissent's position, the fact that plaintiff produced *some* evidence that defendant had the ability to "affect or control a term, condition, or privilege of plaintiff's employment," *post* at 2, is not sufficient to present a genuine issue of material fact for the jury.

19

the employee, controlled what tasks he worked at, and had the ability to fire or discipline the employee. Further, the employer defendant actually affected the plaintiff's employment by laying him off. As a result, the Court of Appeals determined that the parties' relationship fell within the scope of the PWDCRA and, therefore, the plaintiff could maintain an action under the PWDCRA.

We hold that a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment. In the instant case, plaintiff has failed to establish that defendant affected or controlled the terms, conditions, or privileges of her employment.[14] Plaintiff was hired, paid,

---

[14] The dissent argues that, because defendant had the authority to control Bennett and Bennett affected a condition of plaintiff's employment, it follows that defendant itself "affect[ed] a condition of plaintiff's employment." *Post* at 6. Based on this reasoning, an employer would apparently *always* be liable for its agent's creation of a sexually hostile work environment. However, we have held that such imposition of vicarious liability is proper only in sexual discrimination cases in which the employer's agent has used his or her authority to alter the terms and conditions of employment. *Chambers v Trettco, Inc,* 463 Mich 297, 310; 614 NW2d 910 (2000), citing *Champion v Nation Wide Security, Inc,* 450 Mich 702, 708-709; 545 NW2d 596 (1996). We have declined to treat sexually hostile work environment cases in the same manner, noting that "strict imposition of vicarious liability on an employer 'is illogical in a pure hostile environment setting' because, generally, in such a case, 'the
(continued…)

20

and subject to discipline by AVI. AVI placed plaintiff in the Wixom plant and had the sole authority to move her to different cafeterias or even to another plant. Plaintiff has failed to demonstrate that defendant affected or controlled whether she was hired, her benefits of employment, or where she was assigned to work. Further, although the cafeterias were located in the Wixom plant, they were operated solely by AVI, and were off-limits to defendant's employees except during break-times.

We conclude that plaintiff failed to raise a genuine issue of material fact that defendant affected or controlled a term, condition, or privilege of her employment. Accordingly, plaintiff may not maintain a cause of action under the CRA against this defendant, and, again, no inquiry into whether defendant possessed sufficient notice that Bennett was engaged in sexual harassment is necessary.

---

(…continued)
supervisor acts outside 'the scope of actual or apparent authority to hire, fire, discipline, or promote.'" *Chambers, supra* at 311, quoting *Radtke v Everett*, 442 Mich 368, 396 n 46; 501 NW2d 155 (1993). We again decline to strictly impose vicarious liability in sexually hostile work environment cases, absent an awareness by the employer of the offensive conduct.

## IV. CONCLUSION

We conclude that plaintiff has failed to establish a genuine issue of material fact that defendant affected or controlled the terms, conditions, or privileges of her employment and, therefore, she cannot bring a claim against defendant under the CRA. Further, we conclude that a common-law claim for negligent retention cannot be premised upon workplace sexual harassment. Accordingly, we affirm the judgment of the Court of Appeals that plaintiff has failed to establish that she may bring a claim under the CRA against this defendant, we reverse the judgment of the Court of Appeals that plaintiff has an actionable claim for negligent retention, and reinstate the trial court's order of judgment in favor of defendant.

Stephen J. Markman
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.

22

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

MILISSA MCCLEMENTS,

    Plaintiff-Appellee/Cross-Appellant,

v                                                                    No. 126276

FORD MOTOR COMPANY,

    Defendant-Appellant/Cross-Appellee.

_____

WEAVER, J. (*concurring in part and dissenting in part*).

I concur in the majority's holding that a worker may bring a claim against a nonemployer defendant under the Civil Rights Act[1] if the worker can establish that the nonemployer defendant affected or controlled a term, condition, or privilege of the worker's employment. *Ante* at 20. But I dissent from the majority's conclusion that plaintiff failed to present a genuine issue of material fact that defendant affected or controlled a term, condition, or privilege of plaintiff's employment. As noted by the majority, when plaintiff reported the incidents to her union steward, she stated that she was advised that if she reported the incidents to defendant, defendant would "turn around and stab you in the back and

---

[1] MCL 37.2101 *et seq.*

you [would] end up losing your job." *Ante* at 4. While this statement standing alone would probably not be sufficient to establish that defendant did, in fact, affect or control a term, condition, or privilege of plaintiff's employment, it does raise a question whether defendant had that ability. Therefore, I would allow the parties to present evidence on this issue and let the question go to the jury.

I also dissent from the majority's conclusion that plaintiff may not pursue a common-law claim for negligent retention. As noted by the majority, MCL 37.2803 provides that "[t]his act shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state." As explained in *Hersh v Kentfield Builders, Inc,* 385 Mich 410, 412; 189 NW2d 286 (1971), under the common-law claim of negligent retention, an employer may be held liable for an intentional tort committed by one of its employees if the employer "'knew or should have known of his employee's propensities and criminal record before commission of an intentional tort . . . .'" (Citation omitted.)

The majority asserts that plaintiff may not pursue a common-law negligent retention claim because the claim is premised entirely on "the statutorily based tort of sexual

2

harassment." *Ante* at 10 (emphasis deleted). I disagree. Plaintiff's negligent retention claim is not premised solely on "the statutorily based tort of sexual harassment," but also implicates other torts such as assault and battery. Therefore, I would allow plaintiff the opportunity to establish her negligent retention claim and let the jury determine whether she has successfully done so.

Elizabeth A. Weaver

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

MILISSA MCCLEMENTS,

    Plaintiff-Appellee,

v                                                                    No. 126276

FORD MOTOR COMPANY,

    Defendant-Appellant/Cross-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I believe there is ample evidence for a jury to decide the issue of whether defendant had adequate notice that one of its supervisors, Daniel Bennett, had the propensity to sexually harass and assault women and was indeed doing so. Accordingly, because plaintiff presented sufficient evidence of notice, a jury should be allowed to determine plaintiff's claims against defendant for sexual harassment under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*, and negligent retention. Therefore, I respectfully dissent from the majority's decision dismissing all of plaintiff's claims.

I. THERE IS SUFFICIENT EVIDENCE THAT DEFENDANT HAD NOTICE OF BENNETT'S PROPENSITY FOR SEXUAL HARASSMENT AND ASSAULT AND ALLEGATIONS THAT HE WAS INDEED SEXUALLY HARASSING AND ASSAULTING WOMEN IN THE WORKPLACE

Plaintiff presented sufficient evidence that defendant had adequate notice of Bennett's propensity to sexually harass and assault women and the pervasiveness of the existing sexual harassment perpetrated by Bennett. Bennett was one of defendant's supervisors. In 1995, defendant learned that Bennett had exposed himself to three teenage girls while driving one of defendant's vehicles. Bennett was convicted of indecent exposure.[1] While the facts related to this conviction alone may not be enough to put defendant on notice, defendant received other information that Bennett was sexually harassing women.

In late October 1998, Justine Maldonado, another of defendant's employees, reported to a production manager that Bennett was sexually harassing her.[2] Maldonado also told another of defendant's employees, David Ferris, about the sexual harassment. Ferris told Jerome Rush, defendant's director of labor relations at defendant's Wixom plant.

Maldonado's complaint was not the first complaint of this nature against Bennett. As detailed in *Elezovic v Ford Motor Co*, 472 Mich 408, 433, 442-444; 697 NW2d 851

---

[1] This conviction was later expunged.

[2] The production manager was also Maldonado's uncle.

2

(2005) (Cavanagh, J., concurring in part and dissenting in part; Weaver, J., concurring in part and dissenting in part), defendant also had notice in October 1998 that Lula Elezovic had stated that Bennett sexually harassed her. This information was shared with the director of labor relations–*the same director of labor relations* who learned of Maldonado's complaints. Further, other coworkers had also discussed sexual harassment involving Bennett with the director of labor relations.[3]

An employer can only avoid liability if it *adequately investigates a claim of sexual harassment* and takes prompt and appropriate remedial action. *Radtke v Everett*, 442 Mich 368, 396; 501 NW2d 155 (1993). Managers and the director of labor relations knew of claims that Bennett was sexually harassing women. These claims, along with knowledge that Bennett had exposed himself to three teenage girls, are sufficient evidence to allow a jury to determine whether, under the totality of the circumstances, defendant adequately investigated these claims and took appropriate

---

[3] Interestingly, in yet another case involving Bennett, *Perez v Ford Motor Co*, unpublished opinion per curiam of the Court of Appeals, issued March 10, 2005 (Docket No. 249737), slip op at 3, the Court of Appeals notes, "Defendant admits that the proper procedure for reporting a sexual harassment claim was to report to the *labor relations department* or a UAW committeeperson." (Emphasis added.)

remedial action.   See *Chambers v Trettco, Inc*, 463 Mich 297, 312, 318-319; 614 NW2d 910 (2000).

## II. PLAINTIFF CAN BRING A CLAIM AGAINST DEFENDANT UNDER THE CRA

The CRA, in MCL 37.2201(a), defines "[e]mployer" as "a person who has 1 or more employees, and includes an agent of that person."   An employer is prohibited from discriminating against an individual by doing any of the following:

> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.
>
> (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.
>
> (c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system.  [MCL 37.2202(1).]

"Discrimination because of sex includes sexual harassment."  MCL 37.2103(i).

> Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

4

(*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i)(*iii*).]

The majority acknowledges that the CRA allows for claims by nonemployees, but the majority states that "unless an individual can establish a genuine issue of material fact that an employer affected or controlled the terms, conditions, or privileges of his or her employment, a nonemployee may not bring a claim under the CRA." *Ante* at 14. According to the majority, plaintiff cannot bring a claim against defendant because "[p]laintiff was hired, paid, and subject to discipline by AVI [Food Systems]. AVI placed plaintiff in the Wixom plant and had the sole authority to move her to different cafeterias or even to another plant." *Ante* at 20-21. The majority's application of the statute in this case ignores the specific language of the statute.

MCL 37.2202(1)(a) states that an employer cannot "otherwise discriminate against an individual with respect to . . . a term, condition, or privilege of employment. . . ." Discrimination includes sexual

5

harassment. MCL 37.2103(i). Sexual harassment includes creating a sexually hostile or offensive work environment, MCL 37.2103(i)(*iii*), and this is exactly what defendant, through its supervisor Bennett, allegedly did to plaintiff.

Defendant's supervisor, Bennett, did not merely have the ability or authority to affect a condition of plaintiff's employment, he allegedly did so because plaintiff alleged Bennett's conduct created a sexually hostile work environment at plaintiff's workplace. Notably, defendant was the only one who had the authority to control *Bennett* and, therefore, affect a condition of plaintiff's employment. The CRA prohibits sexual harassment by an employer or an employer's agent. Bennett was defendant's agent when he allegedly sexually harassed plaintiff. Therefore, plaintiff can bring a claim against defendant for sexual harassment under the CRA.[4]

### III. PLAINTIFF CAN BRING A CLAIM AGAINST DEFENDANT FOR NEGLIGENT RETENTION

MCL 37.2803 states that the CRA "shall not be construed to diminish the right of a person to direct or

---

[4] Contrary to the majority's presentation of the dissent's position, see *ante* at 20 n 14, defendant would be liable only if it had notice and did not adequately investigate the claim and take prompt and appropriate remedial measures, just as in all other hostile work environment sexual harassment cases.

immediate legal or equitable remedies in the courts of this state." When a statute provides a remedy for enforcement of a common-law right, it is cumulative and not exclusive. *Pompey v Gen Motors Corp*, 385 Mich 537, 552-553; 189 NW2d 243 (1971). The passage of the CRA did not abolish plaintiff's right to bring a negligent retention claim against defendant.

As stated by plaintiff's counsel during oral argument, Bennett's conduct, while indeed sexual harassment, was also "classic assault and battery, [a] common law tort." Plaintiff's complaint also alleged that Bennett posed a "known danger to women" and "sexually assaulted" plaintiff. Plaintiff's claim that Bennett grabbed her and tried to put his tongue in her mouth, as well as Maldonado's claims that Bennett assaulted her and exposed himself to her and Elezovic's claims that Bennett assaulted her, certainly qualify as assaultive behavior. See, e.g., *Radtke*, *supra* at 395 (sexual assault can be sexual harassment that creates a hostile work environment).

Plaintiff has presented sufficient evidence that defendant was aware of Bennett's propensity to sexually harass and assault women and that defendant negligently retained Bennett in light of this information. See *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 412, 415; 189 NW2d

286 (1971). Accordingly, I believe that plaintiff can present a claim for common-law negligent retention to a jury, and the jury should decide whether defendant acted reasonably.

## IV. CONCLUSION

I believe that plaintiff presented sufficient evidence that defendant had adequate notice of Bennett's propensity to sexually harass and assault women and that Bennett was indeed doing so in the workplace. It is then a question for the jury whether defendant's subsequent conduct was reasonable under the circumstances. Accordingly, I would reverse the decision of the Court of Appeals in part and allow plaintiff to proceed on her claim under the CRA. I would also affirm the decision of the Court of Appeals in part and allow plaintiff to proceed on her claim for negligent retention.

Michael F. Cavanagh
Marilyn Kelly

8