*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0049p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BURL and CATHY MCLIECHEY, husband and wife on behalf of a class of persons similarly situated,
           *Plaintiffs-Appellants,*

           *v.*

BRISTOL WEST INSURANCE COMPANY, f/k/a Reliant Insurance Company, f/k/a LHIW Insurance Company,
           *Defendant-Appellee.*

No. 06-1228

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 05-00103—Robert Holmes Bell, Chief District Judge.

Argued: December 7, 2006

Decided and Filed: January 30, 2007

Before: CLAY, ROGERS, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jay Angoff, ROGER G. BROWN & ASSOC., Jefferson City, Missiouri, for Appellant. Lori McAllister, DYKEMA GOSSETT, Lansing, Michigan, for Appellee. **ON BRIEF:** Jay Angoff, ROGER G. BROWN & ASSOC., Jefferson City, Missiouri, Thomas V. Hubbard, DREW, COOPER & ANDING, Grand Rapids, Michigan, for Appellant. Lori McAllister, DYKEMA GOSSETT, Lansing, Michigan, for Appellee

_____

## OPINION

_____

ROGERS, Circuit Judge. Bristol West Insurance Company changed Burl and Cathy McLiechey's insurance policy after the McLiecheys moved into a higher risk area, received a worse credit rating, and had a two week lapse in insurance coverage due to a temporary inability to pay premiums. The McLiecheys allege, on behalf of similarly situated class members, that Bristol West's three justifications for changing their insurance policy violated Chapter 21 of the Michigan Insurance Code, a statute that regulates the setting of insurance rates. *See* Mich. Comp. Laws § 500.2101 *et seq*. The district court dismissed the McLiecheys' complaint because the statutes upon which the McLiecheys relied do not create a private cause of action.

We affirm because the two Michigan statutes upon which the McLiecheys rely do not establish a cause of action. First, under Michigan law, Chapter 21 of the Michigan Insurance Code would only create a private cause of action if the remedies that Chapter 21 provided were "plainly inadequate." In this case, Chapter 21 provides an adequate remedy, although not necessarily the remedy that class members most desire. Second, the Consumer Protection Act, Mich. Comp. Laws. § 445.901 *et seq.*, which creates a private cause of action, does not extend to claims under Chapter 21 of the Michigan Insurance Code. The Consumer Protection Act does not apply to claims regarding "transactions or conduct specifically authorized" by statute, and Chapter 21 specifically authorizes and regulates the setting of insurance rates.

This case involves the interpretation of Chapter 21 of the Michigan Insurance Code, also known as the Essential Insurance Act, which regulates the setting of insurance rates. Mich. Comp. Laws § 500.2101. Chapter 21 provides that "[r]ates shall not be excessive, inadequate, or unfairly discriminatory," defined as "not reasonably justified by differences in losses, expenses, or both, or by differences in the uncertainty of loss, for the individuals or risks to which the rates apply." *Id.* § 500.2109(1). The statute lists factors that insurance companies may consider in setting automobile insurance (e.g., age of the driver, vehicle characteristics, commuting mileage), personal protection insurance (e.g., earned income, use of safety belts), and home insurance (e.g., use of locks and smoke detectors), and factors that they may not consider (e.g., sex, marital status). *Id.* § 500.2111. The statute also permits insurance companies to maintain "statistical reporting territories" and, if the Commissioner of Insurance agrees,"utilize factors in addition to those specified" in the statute. *Id.* Finally, "[i]f uniformly applied to all its insured" and if "the plan is consistent with the purposes of [Chapter 21] and reflects reasonably anticipated reductions in losses or expenses," an "insurer may establish and maintain a premium discount plan utilizing [additional] factors." *Id.* § 500.2110a.

Chapter 21 also establishes a remedial scheme. If a "person [ ] has reason to believe that an insurer has improperly denied him or her" insurance or "has charged an incorrect premium for that insurance," that person is entitled "to a private informal managerial-level conference with the insurer and to a review before the [C]ommissioner, if the conference fails to resolve the dispute." *Id.* § 500.2113(1); *see also id.* § 500.2114. If the insurer refuses to meet or the insurer's proposed resolution of the claim is unsatisfactory, the person "shall be entitled to a determination of the matter by the [C]ommissioner," who "shall by rule establish a procedure for determination . . . which shall be reasonably calculated to resolve these matters informally and as rapidly as possible, while protecting the interests of both the person and the insurer." *Id.* § 500.2113. The person may then request that the Commissioner "proceed to hear the matter as a contested case," *id.*, and may then seek judicial review. *Flumingnan v. Detroit Auto. Inter-Ins. Exch.*, 345 N.W. 2d 910, 914 (Mich. Ct. App. 1983). As discussed in more detail below, the McLiecheys argue that the statute's remedial scheme is plainly inadequate, thus triggering the inference under Michigan law that the legislature intended to create a private cause of action.

Plaintiffs filed a class action in the Kent County Circuit Court, alleging that Bristol West breached an implied covenant of good faith and fair dealing, violated the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*, and violated the Michigan Essential Insurance Act, Mich. Comp. Laws § 500.2101 *et seq.* (Chapter 21 of the Michigan Insurance Code). Relying on 28 U.S.C. §§ 1332 (diversity jurisdiction), 1446 and 1453 (removal), Bristol West filed a notice of removal on July 8, 2005, to remove the case to federal court, and, on July 13, 2005, filed a motion to dismiss.

The federal district court dismissed all three claims in the McLiecheys' complaint. First, the district court dismissed the count alleging a violation of Chapter 21 because the remedial scheme in Chapter 21 was not "plainly inadequate," and Chapter 21, therefore, did not create a private cause of action. Second, the district court dismissed the McLiecheys' Consumer Protection Act claim because that Act does not apply to Bristol West's decisions, which fell under the Michigan Insurance

Code. Third, the district court dismissed the class's good faith and fair dealing claim, a decision that the McLiecheys do not challenge on appeal. Finally, the district court noted that dismissal was warranted on the alternative grounds of exhaustion of administrative remedies and primary jurisdiction, grounds that we do not reach here.

On appeal, the McLiecheys challenge the district court's decision to dismiss the Chapter 21 claim, arguing that the remedy that Chapter 21 provides is plainly inadequate, and, therefore, the courts should infer that the Michigan legislature intended to create a private cause of action. They also challenge the district court's decision to dismiss the Consumer Protection Act claim, arguing that the Michigan Insurance Code did not specifically authorize Bristol West's behavior and that the Consumer Protection Act, therefore, provides them with a cause of action. Both arguments are without merit and the McLiecheys cannot pursue a private cause of action against Bristol West under either Chapter 21 or the Consumer Protection Act.

First, Chapter 21 does not create a private cause of action because its remedial scheme is not "plainly inadequate." Under Michigan law, "Where a statute gives new rights and prescribes new remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *McClements v. Ford Motor Co.*, 702 N.W.2d 166, 171 (Mich. 2005), *amended* 704 N.W.2d 68 (Mich. 2005) (quoting *Monroe Beverage Co. v. Stroh Brewery Co.*, 559 N.W.2d 297, 298-99 (1997)). Because Chapter 21 does not explicitly provide for a private cause of action, courts will interpret the statute as creating one only if the statutory remedial scheme is "plainly inadequate," *see Gen. Aviation, Inc. v. Capital Region Airport Auth.*, 569 N.W.2d 883, 885 (Mich. Ct. App. 1997), or "provide[s] no means of enforcement," *see Pro-Staffers, Inc. v. Premium Mfg. Support Servs., Inc.*, 651 N.W.2d 811, 816 (Mich. Ct. App. 2002). The parties fundamentally disagree over whether Michigan case law supports the proposition that Chapter 21's remedial scheme is "plainly inadequate," but agree that there is no case directly on point.

Michigan cases do suggest, however, that the remedies in Chapter 21 are not "plainly inadequate." In *McClements*, for example, the Michigan Supreme Court ruled that an employee could not bring a common law claim for negligent retention in the context of a workplace sexual harassment claim. 702 N.W.2d at 171. The statute at issue provided a remedial scheme that included only "a civil action for appropriate injunctive relief or damages, or both," and not a common law claim of negligent retention. *Id.* (quoting Mich. Comp. Laws § 37.2801(1)). The Michigan Supreme Court, finding the remedial scheme adequate, construed the statute narrowly and did not allow the plaintiff to recover under a cause of action that the statute did not provide. In *Pro-Staffers*, the Michigan Court of Appeals decided that an employer whose employee was injured by a third-party tortfeasor could not sue the third party for damages in the form of increased worker's compensation premiums and lost profits. 651 N.W.2d at 815. The Michigan statute in *Pro-Staffers* only permitted the employer to recover from the third-party tortfeasor for benefits that the employer paid to the injured employee, and not for the increased premiums. *Id.* at 816-17. Because the statute permitted the employer to obtain some relief but not all the relief that the employer sought, the court reasoned that the statute's remedies were not "plainly inadequate." *Id.* at 817.

Like the statutes in *McClements* and *Pro-Staffers*, Chapter 21 provides a remedial scheme for the McLiecheys, and like the remedial scheme in *McClements* and *Pro-Staffers*, the remedial scheme does not provide the plaintiff with the ideal remedy (a claim for negligent retention in *McClements*, payment for the cost of increased premiums in *Pro-Staffers*, and refunds in this case). A remedial scheme is not "plainly inadequate" merely because it does not provide a plaintiff with the ideal result.

The fact that the plaintiffs in *McClements* and *Pro-Staffers* received some money damages while the McLiecheys would receive no damages in this case is not a meaningful distinction. This

appears to be the express reasoning in *General Aviation*, where the Michigan Court of Appeals held that a legislative remedial scheme is not "plainly inadequate" because, as in this case, the Commissioner could seek only an injunction and the aggrieved party could not seek money damages. 569 N.W.2d at 885.

The McLiecheys' efforts to distinguish *General Aviation* are themselves plainly inadequate. The McLiecheys note that Chapter 21 does not permit the Commissioner to mandate refunds, *Allstate Ins. Co. v. Dep't of Ins.*, 491 N.W.2d 616, 619-21 (Mich. Ct. App. 1992),[1] while the statute at issue in *General Aviation* did permit a plaintiff to obtain monetary relief by reporting an alleged violation to the Commissioner. The result in *General Aviation*, however, did not hinge on whether the Commissioner could obtain money damages on behalf of an aggrieved party. The court noted that the statute in *General Aviation* "specifically provides for the enforcement of its provisions" by the "Aeronautics Commission and by other state, county, and municipal officers, including the county prosecutors," 569 N.W.2d at 885, and that "the commission is to enforce [the statute] 'by injunction in the circuit court.'" *Id.* (quoting Mich. Comp. Laws § 259.51(5)). The court held that "[w]e do not find *these* remedies to be 'plainly inadequate.'" *Id.* (emphasis added). While other provisions of the statute at issue in *General Aviation* might have permitted the Commissioner to pursue money damages, the court's decision suggested that the Commissioner's ability to seek an injunction demonstrated that the remedial scheme was not plainly inadequate.

Finally, Chapter 21 differs from the remedial scheme that the Michigan Court of Appeals found plainly inadequate in *Lash v. City of Traverse City*, 720 N.W.2d 760 (Mich. Ct. App. 2006). In *Lash*, the statute contained "no applicable legislatively prescribed remedy for violations of the statute." *Id.* at 764. Here, in contrast, Chapter 21 does create a remedial scheme. *See* Mich. Comp. Laws §§ 500.2113-14.

The McLiecheys' alternative argument that the Michigan Consumer Protection Act affords them an independent private cause of action is also without merit. Section 4(1)(a) of the Michigan Consumer Protection Act makes clear that the statute does not apply to "transaction[s] or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state." Mich. Comp. Laws § 445.904(1)(a). This exemption precludes recovery under the Consumer Protection Act in this case because the insurance rate setting conduct of the defendant is specifically authorized by Michigan law within the meaning of the exemption. Plaintiffs seek to avoid this result by arguing that Bristol West's conduct violated Chapter 21 of the Michigan Insurance Code and, therefore, was not "authorized" by Chapter 21, but such an argument involves a fundamental misunderstanding of the purpose of § 4(1)(a).

The Michigan Supreme Court's analysis in *Smith v. Globe Life Insurance Co.*, 597 N.W.2d 28 (Mich. 1999), directly supports this conclusion. In *Globe Life*, an insured sued Globe Life Insurance for breach of a credit-life-insurance contract after the insurance company refused to pay the insured. *Id.* at 31. The Supreme Court of Michigan held that although § 4(1)(a) of the Michigan Consumer Protection Act generally exempts transactions that are "specifically authorized" by law, § 4(2), as it was then written, provided an exception to that exemption by permitting certain private actions to be brought, *inter alia*, under Chapter 20 of the Insurance Code. The Supreme Court noted:

---

[1] To reach this conclusion, the court in *Allstate* contrasted the remedy provision in Chapter 21 with the remedy provision in Chapter 20 of the Michigan Insurance Code, which prohibits other insurance-related practices. 491 N.W.2d at 620. Unlike Chapter 21 at issue in this case, Chapter 20 empowers the Commissioner to investigate insurance companies, Mich. Comp. Laws § 500.2028, hold hearings, Mich. Comp. Laws § 500.2030, and impose fines, require refunds, or suspend an insurer's license. Mich. Comp. Laws § 500.2038. Because Chapter 20 provides for the imposition of fines but Chapter 21 does not, the Court of Appeals held that the Commissioner may not impose refund sanctions under Chapter 21. *Allstate Ins. Co.*, 491 N.W.2d at 619.

> Although § 4(1)(a) generally provides that transactions or conduct "specifically authorized" are exempt from the provisions of the MCPA, § 4(2) provides an exception to that exemption by permitting private actions pursuant to § 11 arising out of misconduct made unlawful by chapter 20 of the Insurance Code. Therefore, the exemptions provided by §§ 4(1)(a) and 4(2)(a) are inapplicable to plaintiff's MCPA claims to the extent that they involve allegations of misconduct made unlawful under chapter 20 of the Insurance Code.

*Id.* at 39. Because the alleged misconduct in this case was not made unlawful by a Michigan code provision then or now listed in § 4(2) (but rather is asserted to violate Chapter 21—not included in the exceptions of § 4(2)), the Supreme Court of Michigan's general analysis of § 4(1) is controlling.

In holding that § 4(1) generally exempted the defendant's activities, the Michigan Supreme Court accepted the defendant's argument that its "application and certificate of insurance forms were submitted to and implicitly approved by the State Commissioner of Insurance" and, therefore, "the immediate transaction, the sale of credit life insurance, was 'specifically authorized'" and exempt under § 4(a)(1). *Id.* at 36-37 (footnotes omitted). The Michigan Supreme Court in *Globe Life* rejected the very argument that the McLiecheys make in this case. The plaintiff in *Globe Life* argued that the statute did not specifically authorize the fraudulent insurance practices that she claimed were committed in that case. *Id.* In squarely rejecting this argument, the Michigan Supreme Court focused "on whether the transaction at issue, not the alleged misconduct, is 'specifically authorized'" by the Credit Insurance Act. *Id.* at 37. Focusing on the transaction and not the alleged misconduct, the Michigan Supreme Court held that—absent the § 4(2) exception—the Michigan Consumer Protection Act would not provide a private cause of action for alleged violations of the Credit Insurance Act merely because "the legality of [the conduct] is in dispute." *Id.* at 38. In this case, as in *Globe Life*, the legality of Bristol West's conduct under the Michigan Insurance Code is in dispute. And as in *Globe Life*, the transaction at issue (setting insurance rates), and not the alleged misconduct (violating Chapter 21), is "specifically authorized" by the Michigan Insurance Code. For this reason, the Michigan Consumer Protection Act does not create a private cause of action.

The McLiecheys seek to limit the plain holding of *Globe Life* by relying on a footnote in the opinion that limits its particular holding to the Credit Insurance Act. The Supreme Court of Michigan noted, "We need not reach or otherwise address consumer transactions that are not before us because it is clear *in this case* that the sale of credit life insurance *is* 'specifically authorized' under the Credit Insurance Act, which is administered by the [I]nsurance [C]ommissioner." *Id.* at 38 n.12. The McLiecheys refer to this footnote and argue that the Michigan Supreme Court did not intend for its holding in *Globe Life* to apply to alleged violations of Chapter 21 of the Michigan Insurance Code. Specifically, they seek to distinguish *Globe Life*, which involved an alleged violation of the Credit Insurance Act regulating the sale of credit life insurance, Mich. Comp. Laws § 550.614, from this case, which involves an alleged violation of Chapter 21 of the Michigan Insurance Code regulating rates of—but not the sale of—automobile insurance. These minor differences, however, are not sufficient to suggest that the Michigan Supreme Court would hold any differently with respect to alleged violations of the Credit Insurance Act. As the Supreme Court noted in the end of the footnote, "insurance companies are not '[l]ike most businesses.'" 597 N.W.2d at 38 n.12. While most businesses are subject to the Michigan Consumer Protection Act, insurance companies are not to the extent that various provisions of the Michigan Insurance Code, obviously including both the Credit Insurance Act and Chapter 21, regulate their conduct. For this reason, the Michigan Consumer Protection Act does not provide the McLiecheys with a private cause of action.

*Attorney General v. Diamond Mortgage Co.*, 327 N.W.2d 805 (Mich. 1982), does not support the McLiecheys' position. In *Diamond Mortgage*, the Michigan Supreme Court held that

an insurance company that engages in non-insurance conduct (such as advertising and offering loans to homeowners) would be subject to the Michigan Consumer Protection Act since the act of advertising and offering loans fell outside of the behavior "specifically authorized" by the real estate licensing statute. *Id.* at 811. Here, in contrast, Bristol West's setting of premiums fell within the realm of conduct specifically authorized in Chapter 21 and a private citizen could not bring a claim under the Consumer Protection Act.

Finally, the 2000 amendment to the Michigan Consumer Protection Act does not affect our analysis. 2000 Mich. Pub. Acts 432. In 2000, the Michigan legislature amended the Michigan Consumer Protection Act, effective March 28, 2001, to make clear that the "act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act or practice that is made unlawful by chapter 20 of the insurance code of 1956." Mich. Comp. Laws § 445.904(3). Bristol West argues that the legislature intended to close "the sole remaining loophole in the *Globe Life* decision" and to make clear that the Michigan Consumer Protection Act does not apply to all claims against insurance companies, while the McLiecheys argue that the legislature's decision to include a special provision for Chapter 20—but not Chapter 21—demonstrates the legislature's intent that there be no cause of action for the former but that there is a cause of action for the latter. The three unpublished cases citing the amendment say nothing about its effect on Chapter 21. *Milhouse v. Mich. Basic Prop. Ins. Ass'n*, No. 257701, 2005 WL 3501364, at *5 (Mich. Ct. App. Dec. 22, 2005) ("Thus, the [Michigan Consumer Protection Act] no longer applies to insurance companies."); *Rodgers v. N. Am. Ins. Co.*, No. 251926, 2005 WL 1683548, at *2-3 (Mich. Ct. App. July 19, 2005); *Kitterman v. Mich. Ed. Employees Mut. Ins. Co.,* No. 247428, 2004 WL 1459523, at * 6 (Mich. Ct. App. June 29, 2004). Without any case support, we are unwilling to make the negative inference that the amendment provides for claims involving alleged violations of Chapter 21.

Because neither of the Michigan statutes relied upon by the plaintiff provides for the private right of action asserted in this case, we affirm the judgment of the district court.