*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN A. COOK,

      Plaintiff-Appellant,

v

FARM BUREAU LIFE INSURANCE
COMPANY OF MICHIGAN, FARM BUREAU
MUTUAL INSURANCE COMPANY OF
MICHIGAN, and FARM BUREAU GENERAL
INSURANCE COMPANY OF MICHIGAN,

      Defendants-Appellees.

UNPUBLISHED
April 2, 2019

No. 341330
Shiawassee Circuit Court
LC No. 2016-009077-NZ

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In this age discrimination lawsuit brought under the Elliot Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, plaintiff, John A. Cook, appeals as of right an order granting defendants Farm Bureau Life Insurance Company of Michigan, Farm Bureau Mutual Insurance Company of Michigan, and Farm Bureau General Insurance Company (collectively, Farm Bureau) summary disposition. We affirm, but for a reason different than that articulated by the trial court.

Plaintiff began working as a Farm Bureau "employee insurance agent" in 2000. He became an independent contractor for defendant pursuant to a September 2013 contract with them. On July 25, 2016, Farm Bureau terminated plaintiff in accordance with the Farm Bureau independent agent agreement's "Notice of Termination" subsection:

> Notice of Termination. The Companies or the Agent may terminate this Agreement at any time, with or without cause, by giving notice of termination, in writing, to the other party. Notice of termination need not include the reason or reasons, if any, for such termination. The date of termination shall be that date specified in the notice or, if no date is specified, the date of termination shall be

the date of delivery if the notice is delivered or the date of the postmark if the notice is mailed.

The termination letter did not specify any cause, but simply stated that Farm Bureau was terminating the agreement, and then quoted the above language from the independent agent agreement. On October 14, 2016, plaintiff filed this age discrimination suit against Farm Bureau. The trial court granted Farm Bureau's motion for summary disposition, holding that plaintiff's independent contractor relationship with Farm Bureau was not protected under the ELCRA.

Plaintiff argues on appeal that the court erred in granting defendant's summary disposition motion on the basis that he could not maintain a lawsuit under the ELCRA. We agree, but conclude that summary disposition was nonetheless properly granted.

We review a trial court's summary disposition ruling de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion brought under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in a light most favorable to the nonmoving party. *The Cadle Co v City of Kentwood*, 285 Mich App 240, 247; 776 NW2d 145 (2009). A motion for summary disposition under MCR 2.116(C)(10) is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Campbell v Human Servs Dep't*, 286 Mich App 230, 235; 780 NW2d 586 (2009). Plaintiff's claim also involves statutory interpretation, which this Court reviews de novo, *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005), and the interpretation of a contract, which this Court also reviews de novo, *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

Plaintiff does not dispute that he was an independent contractor. However, he argues that he was not precluded from suing defendant under the ELCRA for discrimination regardless of his status as an independent contractor. We agree.

In pertinent part, MCL 37.2202(1) provides that, "An employer shall not . . . [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age[.]" Notably, the above does not state that an employer is prohibited from engaging in acts of discrimination only against its own employees. Rather, as stated in *McClements v Ford Motor Co*, 473 Mich 373, 385; 702 NW2d 166 (2005), one may bring an action under the ELCRA against an employer if the individual can establish that an employer affected or controlled a term, condition, or privilege of his or her employment.

In *McClements*, a cashier employed by a cafeteria at a Ford plant alleged that a Ford superintendent had sexually harassed her. *Id*. at 376-377. She alleged, *inter alia*, that Ford knew of the superintendent's tendencies and breached an obligation under the ELCRA to prevent his behavior. The Court determined:

> [A]n employer is liable under the [ELCRA] when it utilizes a prohibited characteristic in order to adversely affect or control an individual's employment

or potential employment. Thus, the key to liability under the [ELCRA] is not simply the status of an individual as an "employee"; rather, liability is contingent upon the employer's affecting or controlling that individual's work status. [*Id.* at 386]

*McClements* thus focused on the element of control, not the label appended to the relationship. The Court ultimately held that the plaintiff's claim against Ford was foreclosed because she failed to show that Ford had control over her work status, stating:

Plaintiff was hired, paid, and subject to discipline by AVI[, her employer]. AVI placed plaintiff in the Wixom plant and had the sole authority to move her to different cafeterias or even to another plant. Plaintiff has failed to demonstrate that [Ford] affected or controlled whether she was hired, her benefits of employment, or where she was assigned to work. Further, although the cafeterias were located in the Wixom plant, they were operated solely by AVI, and were off-limits to defendant's employees except during break-times. [*Id.* at 389-390.]

In considering Farm Bureau's motion for summary disposition, the trial court determined that *McClements* was inapposite because it, "involve[d] a third-party's employee who was working at the [factory] where Ford was controlling them." The trial court determined that, in contrast, plaintiff was an independent agent and thus, his claim was foreclosed under the ELCRA. The trial court did not analyze Farm Bureau's level of control over plaintiff's work as the *McClements* Court found necessary.[1] We find that the trial court erred in pronouncing that plaintiff's status as an independent agent disqualified him from ELCRA protection, without first inquiring into the amount of control Farm Bureau asserted over the terms, conditions, and privileges of plaintiff's work. We thus undertake that inquiry in order to appropriately resolve the issue now before this Court.

The parties' independent agent agreement provides, in relevant part, as follows:

Independent Contractor Relationship

The [Farm Bureau] Companies believe that insurance agents who operate as independent contractors are best able to provide the creative selling, professional counseling, and prompt, skillful service essential to the creation and maintenance of successful multiple line insurance companies and agencies. The Companies do not seek, and will not assert, control over the Agent's daily activities, provided that the Agent does not violate applicable laws or any terms of this Agreement or any agreement or guidelines ancillary to this Agreement. The Agent agrees to exercise his/her own judgment as to the time, place, and manner of soliciting insurance, servicing Michigan Farm Bureau Members and Farm

---

[1] Nothing from the text of *McClements* suggests that the Supreme Court constrained its aforementioned analysis to a traditional employer-employee relationship or to situations where a worker is hired by a third-party employer to perform a task within another employer's facility.

Bureau Insurance policyholders and otherwise carrying out the provisions of this Agreement.

\* \* \*

C.    Independent Contractor.

1.    The Agent acknowledges that he/she is an independent contractor for all purposes and situations governed by this Agreement.  The relationship between the Agent and the Companies created by this Agreement shall be governed by those rules and laws governing the status of and relationships with independent contractors and not those rules and laws governing employer-employee relationships.  Accordingly, the Agent has full control of his/her daily activities, with the right to exercise independent judgment as to the time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement . . . .

\* \* \*

D.    Agent's Responsibilities.    The agent agrees to comply with the Companies' rules and regulations pertaining to the policies and products covered by this Agreement; provided, however, that such rules and regulations shall not interfere with the Agent's status as an independent contractor.

The above provisions clearly establish that plaintiff is in control of the time, manner, and place of soliciting clients and servicing policyholders. However, additional provisions in the agreement clearly establish that defendant controlled plaintiff's compensation:

G.    Compensation.    The Companies shall pay the Agent commissions and bonuses only as set forth in the applicable Agent Compensation Schedule . . . . Farm Bureau Insurance has the right, in its sole discretion, to modify the Agent Compensation Schedules.  Notice of any such modification shall be provided to the Agent.

\* \* \*

2.    Commissionable Premiums. Commissionable premiums shall consist of only those premiums which are collected and retained by Farm Bureau [] on business personally produced by or assigned to the Agent.  If, after a contract of insurance is issued and the commission is paid, the contract is changed to include a different plan of insurance or the premium paid on the contract of insurance is refunded for any reason, the Companies shall have the right to determine what, if any, change in commission is required and the Agent shall have such amount deducted from commissions.

3.    First Lien.    The Companies shall have first lien on all commissions or other compensation due, or to become due, to the Agent in discharge of any indebtedness owing to the Companies by the Agent.

-4-

4. Commission Deduction Authorization. The Agent agrees that the Companies may deduct from the Agent's commissions, bonuses, and other compensation, all indebtedness or obligations which the Agent owes to the Companies and/or which the Agent has obligated the Companies to pay. Such indebtedness or obligations shall include, but shall not be limited to, any debts incurred by the Agent as a result of a New Agent Finance Plan Agreement and any fees charged to the Agent as a result of the Companies' rules or regulations.

Further, the agreement mandated that Farm Bureau could reassign an independent agent's business when certain activities took place:

H. Reassignment of Business. Regardless of public branding to the Agent's customers, office or staff sharing arrangements, or any other such agreements to which the Companies are not party to a written agreement, the Companies may reassign the Agent's business, even if personally produced by or assigned to the Agent[.]

The terms of the independent contractor agreement clearly establish that Farm Bureau affected or controlled a term, condition, or privilege of plaintiff's employment—primarily that of compensation. Accordingly, if plaintiff can establish an ELCRA claim, he is not precluded from pursuing that claim.

When analyzing claims under the ELCRA where no direct evidence of bias can be found, Michigan courts employ the framework for analyzing discrimination claims articulated by the United States Supreme Court in *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed2d 668 (1973). *Hazle v Ford Motor Co,* 464 Mich 456, 462; 628 NW2d 515 (2001). Under the traditional *McDonnell Douglas* burden-shifting test, the plaintiff first has an obligation to present a prima facie case from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. This requires the plaintiff to present evidence that: (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Hazle,* 464 Mich at 463. If a plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises. *Id*. at 463 (citation omitted). The defendant then has the opportunity to rebut the presumption created by the plaintiff's prima facie case by producing evidence that its employment decision was made for a legitimate, nondiscriminatory reason. *Id*. at 464. If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away and, in order to survive a motion for summary disposition, the plaintiff must then "demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id*. at 465, quoting *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998).

In this case, plaintiff averred that he was terminated[2] and was 60 years old at the time of his termination. He intimated that his length of service for Farm Bureau demonstrated that he was qualified for his job. These allegations satisfy the first three elements under *McDonnell Douglas* to establish a prima facie case of discrimination and defendant does not claim otherwise. With respect to the fourth element, plaintiff's book of business was purportedly transferred to 33-year-old Farm Bureau agent Thomas Stacey. To support his claim that his business was given to Stacey under circumstances giving rise to an inference of unlawful discrimination, plaintiff directs this Court to the deposition testimony of Mark Thompson, a managing partner of defendant. Thompson testified that when looking for an agent to take over another agent's book of business, defendant typically looks for someone who it thinks will be with the company "a long time." This statement does not, however, provide an indicia of age discrimination as Thompson did not elaborate on what a "long time" was and there is no indication that a person of 60 years old could not be with defendant for a "long time." Moreover, Thompson testified that the first and most important criteria employed in seeking an agent in such circumstances was based on geographical location, with the intended goal to prevent established policyholders from having to drive a long distance to their new agent.

Plaintiff also directs this Court to the deposition of Matthew Taylor, another of defendant's managing partners, and an email sent by Taylor on April 11, 2013. In the email, sent from Taylor to an insurance agent for defendant, Taylor asked for the agent's permission to, "send a recruiting referral letter to your clients with life insurance ages 25-40." In his deposition, Taylor testified that he has recruited specific age groups. Taylor testified that, whenever he recruits, he tries to, "target market" explaining that, for example, when he is at a college campus, there is an age group that would be traditional to undergraduate college students. According to Taylor, there is a different demographic for every event. Taylor testified that he has targeted every specific age group at some point. Taylor indicated that the April 11, 2013, email was an example of him seeking to recruit existing Farm Bureau clients to become agents. Taylor testified that one of the segments he tries to recruit are people changing careers, and that if a person already has life insurance with defendant, they believe in defendant and would not have trouble speaking to prospective clients about the insurance. Taylor testified that there was no specific reason he decided to target ages 25-40 in the email. We find that, while the email and testimony may provide an indication that Taylor has specifically sought to recruit agents in a younger age bracket than plaintiff, it does not establish that *plaintiff's* work or book of business was given to another person under circumstances giving rise to an inference of unlawful discrimination. *Hazle,* 464 Mich at 463.

Plaintiff also directs this Court to the deposition testimony of Michael White, a former independent contractor for defendant. White testified that he was a captive insurance agent for defendant from 1989 until 2013. White testified that he resigned from his position with defendant when he was 61. He testified that he resigned because he was drawing close to the time he planned on ending working. White testified that he also had a lot of stress dealing with

---

[2] Termination of employment has been recognized as adverse employment action. *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016).

long-time clients that may have been required to repair their homes to ensure they were insured for the proper amoun, and were maintained such that they did not have any increase in hazard due to lack of maintenance. White testified that he had expressed his frustrations to mark Thompson and received a letter from defendant detailing his retirement options. White testified that he had not told Thompson or anyone else from defendant that he was retiring and so was shocked to get the letter. White testified that he felt it would have been more courteous for defendant to discuss his stress and the possibility of his retiring through a method other than a letter, which hurt his feelings. He testified that in further conversations with Thompson and the other managing partner, he was satisfied that they were not looking to dump him. White testified that he thought about the retirement options for approximately one month and told Thompson and another managing partner that he was going to retire. White testified that his book of business was divided between his former partner of approximately 13 years and a younger agent.

It is unclear how or why plaintiff believes the above testimony supports his prima facie case of age discrimination. White testified that he was not happy with the way things were going with respect to his dealings with clients, and that he was closing in on the time he planned on ending paid work. White testified that defendant's providing him with a letter indicating that he had options when he retired "hurt his feelings" but that he did not get the impression from speaking with Thompson or the other managing partner that they were trying to get rid of him. Moreover, White elected to retire; he was not terminated from his contract with defendant. Thus, White's testimony does nothing to establish that plaintiff's termination (or White's retirement) took place under circumstances giving rise to an inference of unlawful discrimination. *Hazle,* 464 Mich at 463.

Finally, plaintiff directs this Court to the deposition of Kathleen Canfield, a long-time Farm Bureau policyholder serviced by plaintiff. She testified that she received a letter from defendant in the summer of 2016 stating that her new agent would be Stacey. Canfield called defendant's main office to complain about how they handled assigning her a new agent (through a letter from the office rather than a letter from plaintiff himself) and Stacey called her a short time later. According to Canfield, Stacey told her that there would be more agents in the area, and younger agents. While Canfield's testimony may be evidence of Stacey's personal opinions about the agents coming to her area, there is no indication that Stacey's personal feelings reflect a policy by defendant of firing agents due to their age and replacing them with younger agents or that they did so in plaintiff's case.

Plaintiff's evidence with respect to establishing the fourth element of a prima facie case of age discrimination is shaky, at best. It appears that plaintiff's claim that defendant had a practice of terminating agents based on age, and did so in his case, appears to be based more on speculation than anything else. Assuming, without deciding, that plaintiff has established a prima facie case giving rise to a presumption of age discrimination, defendant is nonetheless entitled to summary disposition.

Once plaintiff created a presumption of discrimination, the defendant then has the burden of producing evidence that its employment action was for a legitimate, nondiscriminatory reason. *Hazle*, 464 Mich at 463-464. At this stage,

> defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. [*Lytle*, 458 Mich at 173-174.]

In its summary disposition motion, Farm Bureau stated that plaintiff was terminated because it was heading off an interruption in service to its insureds after it was made aware that plaintiff intended to or was considering leaving the company. Defendant provided the trial court with the affidavits of several Farm Bureau employees to support its claim of a legitimate, non-discriminatory reason for plaintiff's termination. Thompson swore in his affidavit that in January of 2016, he became aware that plaintiff had told defendant and one of defendant's board members that he was dissatisfied with defendant and intended to or was considering moving to an independent agency. Thomson swore that plaintiff's contract with defendant was terminated because plaintiff had made it known that he planned on leaving defendant. Thompson swore that part of his responsibility was to anticipate changes in agent status and plan appropriately to ensure that defendant's policyholders were not disrupted. Thompson swore that the existing agency force in defendant's county was not capable of handling the transfer of policyholders such that defendant could not wait and see if or when plaintiff terminated his contract. Thompson swore that he established the termination of plaintiff and the transfer of plaintiff's book of business to another agent to meet defendant's business needs and the needs of policyholders in plaintiff's area. Thompson swore that once plaintiff stated his dissatisfaction with defendant and his intention to work as an independent insurance agency, plaintiff was no longer qualified to continue to be an agent for defendant. Emails from Thompson to defendant in January of 2016 confirm Thompson's concerns about plaintiff's likely imminent departure and the lack of an agent to handle plaintiff's book of business as well as the need to put a plan in place as soon as possible to avoid disrupting any policyholder's service.

Taylor swore in his affidavit that at an annual meeting with plaintiff around December of 2015, plaintiff indicated he was dissatisfied with defendant's commission plan and intended to or was considering moving to an independent agency. Taylor swore that plaintiff asked about the non-solicitation of defendant's customers provision in the parties' contract. Taylor swore that he also learned that plaintiff had told others at defendant that he was planning to leave defendant.

In his affidavit, Timothy Kiesling, a member of defendant's board of directors, swore he was present in plaintiff's office in December of 2015 or January of 2016. Kiesling swore that he asked plaintiff how things were going and plaintiff told him that he was considering leaving defendant because he was unhappy with changes that had been made. According to Kiesling,

plaintiff indicated he was unhappy with his compensation. Kiesling further swore that at a later board meeting, another board member brought up that plaintiff was leaving defendant.

Plaintiff testified in his deposition that at his January of 2016 review with defendant, he was unhappy about the change of the commission rates defendant paid and asked about compensation paid by other insurance agencies. After the review, he spoke to an agent with another insurance agency to inquire concerning the compensation the insurance company paid to its independent contractors. He testified that he may have talked to other agents with other agencies at times concerning compensation as well.

Finally, Amy Delo, defendant's director of business and strategic development, swore in her affidavit that as of October 13, 2016, 63% of defendant's insurance agents were 40 years of age or older, with 32% being 50 or older, 11% being 60 or older, and 1% being 70 or older.

With the above, defendant articulated a legitimate, nondiscriminatory reason for plaintiff's discharge. *Lytle*, 458 Mich at 173-174. The reason(s) articulated for plaintiff's termination did not involve plaintiff's age and reflected a legitimate concern, i.e., that plaintiff would leave the company and leave a gap in service for its customers. That being true, the presumption of age discrimination drops away and the burden now shifts back to plaintiff to show, by a preponderance of admissible evidence, "that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Id*. at 174. A plaintiff can establish that a defendant's articulated legitimate, nondiscriminatory reasons are pretexts and that discrimination was a motivating factor in its adverse action toward plaintiff

> (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision. [*Feick v Monroe Co*, 229 Mich App 335, 343; 582 NW2d 207 (1998).]

In support of his argument that the reasons for his termination provided by defendant were mere pretext, plaintiff states that Farm Bureau did not originally provide him with a reason for termination, and only offered an explanation after plaintiff sued the company. However, plaintiff has directed this Court to no authority suggesting that where, pursuant to a contract, an employer has no obligation to articulate a specific reason for termination it is precluded from later doing so. We see no reason why an employer would not be allowed to introduce its reason for terminating an employee at the summary disposition phase, or that its failure to previously provide a specific reason for termination would require an adverse inference. Plaintiff postulates that Farm Bureau's reason for termination had no basis in fact, was not actually its motivation, and was insufficient to justify the decision. However, plaintiff supports these premises only with his own assertion that they are so. He points to no supporting evidence. Plaintiff's assertion is not legally admissible evidence, and it is not this Court's responsibility to rifle through the record to find legally admissible evidentiary support for plaintiff's position. See, e.g., *Great Lakes Div of Nat Steel Corp v City of Ecorse*, 227 Mich App 379, 425; 576 NW2d 667 (1998). Plaintiff's claim, at most, raises a question about the soundness of Farm Bureau's business decision, which is insufficient to show a genuine issue of fact regarding pretext. *Meagher v Wayne State Univ*, 222 Mich App 700, 712; 565 NW2d 401 (1997).

In sum, although the trial court erred in ordering summary disposition based on its conclusion that plaintiff was an independent contractor, summary disposition was nonetheless proper, because plaintiff failed to meet his evidentiary burden to proceed with an unlawful discrimination claim. We therefore affirm the trial court's grant of summary disposition in favor of defendant, because it reached the right result, albeit for the wrong reason. See *Hoffenblum v Hoffenblum*, 308 Mich App 102, 114; 863 NW2d 352 (2014).

Affirmed.


/s/ Michael J. Kelly
/s/ Deborah A. Servitto